UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**ROTHSTEIN ROSENFELDT ADLER, P.A.**,<br><br>  Debtor. | **CASE NO. 09-34791-RBR**<br>**CHAPTER 11** |
| **HERBERT STETTIN**, chapter 11 trustee,<br><br>  Plaintiff,<br><br>v.<br><br>**RUSSELL ADLER** and **KATIE ADLER**,<br><br>  Defendants. | **ADV. PRO. NO. 10-02612-RBR** |

### DEFENDANTS' MOTION TO PERMIT DEPOSITION OF SHERIFF AL LAMBERTI

Defendants, Russell Adler and Katie Adler (the "Adlers"), by and through their undersigned counsel, file *Defendants' Motion to Permit Deposition of Sheriff Al Lamberti* (the "*Motion*"), and as grounds therefore, respectfully state as follows:

#### Introduction

Plaintiff, as trustee of the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A. ("Debtor" or "RRA"), brought the above-captioned action against the Adlers seeking, among other things, to avoid and recover a number of alleged fraudulent transfers made by the Debtor to the Adlers. A major element of the Adlers' defense to the Trustee's fraudulent transfer claims is the Adlers' good faith surrounding each of the transfers. In other words, the Adlers received the transfers without having knowledge of or reason to suspect that the transfers were made fraudulently. To establish their objective good faith, the Adlers intend on presenting the testimony of, among others, Sheriff Al Lamberti, who had a friendship with Scott Rothstein, the principal actor in the

fraudulent scheme upon which Plaintiff bases his claims against the Adlers, in order to show that the Adlers, no different than Sheriff Lamberti, had no reason to suspect the fraud being committed by Scott Rothstein.

**Procedural Background**

1. Plaintiff commenced this adversary proceeding on February 8, 2010 by the filing of Plaintiff's *Complaint Against Russell Adler and Katie Adler to Avoid and Recover Fraudulent Transfers of Property*. [Docket Entry ("D.E.") 1].

2. Plaintiff amended his complaint on February 11, 2010 (the "*Amended Complaint*"), asserting ten counts against, in some cases, Russell Adler, individually, and in the remainder, jointly against Russell and his wife, Katie. The first six counts are to avoid alleged fraudulent transfers made to the Adlers, the seventh alleges breach of fiduciary against Russell Adler, the eighth is for the Alders' alleged breach of a promissory note, and the last two seek, respectively, to establish a constructive trust over or the imposition of an equitable lien against a New York cooperative apartment owned by the Adlers (the "Apartment"). [D.E. 4].

3. The fraudulent transfers that the Trustee alleges to have been made by RRA, which are the subject of this *Motion* were excessive compensation paid and employee loans made to Russell Adler, and funds lent to the Adlers jointly to purchase the Apartment.

4. On June 18, 2010, the Adlers filed their *Answer and Affirmative Defenses*. [D.E. 67].

5. In support of the Adlers' defenses, in particular, their good faith defenses arising under 11 U.S.C. § 548(c) and 550(b), the Adlers noticed Sheriff Al Lamberti for the taking of his deposition inasmuch as the Adlers had knowledge of Sheriff Lamberti's relationship with Scott Rothstein.

6. Sheriff Lamberti filed a motion for protective order that sought to prevent the taking of his deposition (the "*Motion for Protective Order*"). [D.E. 121].

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 ● Telephone 954.745.5880

7.    The Court heard the *Motion for Protective Order* on November 17, 2010 and entered its *Order on Motion for Protective Order* (the "*Order*"), [D.E. 133], on November 23, 2010, temporarily suspending Sheriff Lamberti's examination in this adversary proceeding.

8.    Per the *Order*, the Adlers may renew their request to examine Sheriff Lamberti, provided they set forth the questions they intend on asking at his examination and the "basis for taking Sheriff Lamberti's deposition in this matter and the connection to this adversary proceeding." *Id.*, at 2.

9.    For the reasons set forth below, the Adlers respectfully renew their request to depose Sheriff Lamberti.

### Memorandum of Law

As acknowledged by Sheriff Lamberti, through his counsel, during the hearing conducted on November 17, 2010, the issue of whether or not the Adlers took the transfers in good faith is analyzed under an objective standard, citing In re World Vision Entertainment, Inc., 275 B.R. 641, 659 (Bankr. M.D. Fla. 2000). In other words, as stated in World Vision, the question to be answered by the finder of fact is "whether circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose." Id. (citing In re M&L Business Machine Co., 84 F.3d 1330, 1337 (10th Cir.1996). This standard was approved by this Court in the case of Feltman v. Michelman & Robinson (In re Certified HR Services Company), 2009 Bankr. LEXIS 2797.

> In determining the existence of good faith under *11 U.S.C. § 548(c)*, courts have evaluated the actions, actual knowledge, and imputed knowledge of the recipient. In re World Vision Entertainment, Inc., 275 B.R. 641 (Bankr. M.D. Fla. 2000). [The defendant] therefore cannot establish good faith by claiming to have ignored facts that would have put them on notice of facially suspect transactions. See In re Harbour, 845 F.2d 1254, 1258 (4th Cir. 1988).[1]

Id., at *6; see also, Development Specialists, Inc. v. Hamilton Bank, N.A., 250 B.R. 776 (Bankr. S.D. Fla. 2000).

---

[1] The claim for actual fraud asserted by the Trustee under § 726.105(1)(a) of the Florida Uniform Fraudulent Transfer Act (Fla. Stat., ch. 726) (*Amended Complaint*, Count III, at 10-11, [D.E. 4]), is also subject to the good faith defense. Wiand v. Waxenberg, 611 F. Supp. 2d 1299, 1319 (M.D. Fla. 2009).

> Good faith is not defined in the Bankruptcy Code. Accordingly, courts generally evaluate good faith defenses on a case-by-case basis. See, e.g., In re Sherman, 67 F.3d 1348, 1355 (8th Cir. 1995). To determine whether a transferee acts in good faith for purposes of § 548(c), courts look to what the transferee objectively "knew or should have known," such that a transferee does not act in good faith when it has sufficient knowledge to place it on inquiry notice of the voidability of the transfer. Id., see also M&L Business Machine, 84 F.3d at 1335-36

Hamilton Bank, N.A., 250 B.R. at 797-98 [internal marks omitted].

Thus, when assessing whether or not the Adlers had reason to know of the purported, unlawful nature of the transfers at issue, it is axiomatic that what third-party witnesses knew or did not know is both relevant and material to the Adlers' good faith defense. See CPI Oil & Refining, Inc. v. Metro Energy Company, 557 F. Supp. 958, 961 (N.D. Ala. 1983) (defending an action grounded in fraud, defendants sought to introduce testimony of third-party witnesses to substantiate defendants' good faith); see also, Hamilton Bank, N.A., supra. at 799.

Sheriff Lamberti is not just a public official; he is the chief law enforcement officer for Broward County. His primary purpose and responsibility is to detect and investigate criminal activity in Broward County. It is abundantly clear from the attached newspaper articles that neither he nor other high ranking members of the Sheriff's Office (Wheeler and Benjamin) ever suspected that Rothstein was engaged in criminal activity, despite his admitted "friendship" with Rothstein and the fact that Messrs. Wheeler and Benjamin were even closer with Rothstein, and never suspected him either. This is why the testimony of Sheriff Lamberti is so critically important to the Adlers' defense to the case at Bar. Attached hereto as Exhibits "A" and "B" are copies of articles dated February 9, 2010 and December 1, 2010 from the Sun-Sentinel that evidence the relationship between Sheriff Lamberti and Scott Rothstein. In addition, attached as Exhibit "C" is a photograph of Sheriff Lamberti with Scott Rothstein believed to be one of those hung in Scott Rothstein's office.

As this Court is well aware, discovery is governed by Rule 26, Fed.R.Civ.P., made applicable to this adversary proceeding pursuant to Rule 7026, Fed.R.Bankr.P. (2010), as amended by Local Rule 7026-1. Recognizing that oftentimes what may not be admissible at trial

nevertheless leads to otherwise admissible evidence, the pretrial discovery process in a case is often given wide latitude:

> The Federal Rules of Civil Procedure strongly favor a full and broad scope of discovery whenever possible, allowing a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1); Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). "Relevancy" under Rule 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)(citation omitted).
>
> Indeed, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues . . . .Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." Oppenheimer Fund, 437 U.S. at 351. In short, information can be relevant and, therefore, discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Dunbar v. United States, 502 F.2d 506, 509-10 (5th Cir. 1974) (citations omitted).

Regency of Palm Beach, Inc. v. QBE Insurance Corp., 259 F.R.D. 645, 648 (S.D. Fla. 2009) [internal footnotes and marks omitted].

Based on the foregoing, it is clear that Sheriff Lamberti's testimony, which is directly relevant to the Adlers' good faith defense, is not only discoverable, but likely to be introduced into evidence. Accordingly, the Adlers seek to depose Sheriff Lamberti within the parameters established by this Court, and in doing so, anticipate making the following requests for information and asking the following questions at the Sheriff's examination:

 a. Please provide your name and professional address for the record.

 b. Isn't it true that you knew Scott Rothstein for many years?

 c. Isn't it true you consider yourself a friend of Scott Rothstein?

 d. Isn't it true Scott Rothstein was a member of the Broward Sheriff Advisory Counsel?

 e. Isn't it true that membership on the Advisory Counsel is by invitation only?

f.  Isn't it true that all members of the Advisory Council must go through a background check before a potential member is approved to join the Council?

g.  Isn't it true that during your campaign to become Sheriff, Scott Rothstein was instrumental in arranging a fundraiser for your campaign at Ross Peiko's house?

h.  Isn't it true that Mr. Rothstein, both through personal friends of his and lawyers employed by RRA, contributed to your campaign?

i.  How much did Mr. Rothstein raise for your election campaign?

j.  Isn't it true that you have been to Mr. Rothstein's house on Las Olas Isles?

k.  Isn't it true you have been to Mr. Rothstein's house in Harbor Beach?

l.  Isn't it true that you were aware of Mr. Rothstein's expensive lifestyle, which includes various homes, jewelry and traveling on private jets?

m.  Isn't it true that you were a guest of Mr. Rothstein in the skybox at Dolphin Stadium on more than one occasion?

n.  How many times did you attend Dolphin games as a guest of Mr. Rothstein?

o.  Isn't it true that you sent a letter to Scott Rothstein congratulating him for the award received from the Anti-defamation League in 2008?

p.  Isn't it true that your letter to Mr. Rothstein thanked him for his friendship during the year prior?

q.  Isn't it true that in your letter you offered to professionally and personally assist Scott Rothstein should he call upon you to do so?

r.  Isn't it true that Tom Wheeler, employed by the Broward County Sheriff Office, was a close personal friend to Mr. Rothstein?

s.  Isn't it true that Mr. Rothstein was a close personal friend of David Benjamin, a lieutenant with the Broward County Sheriff's Office?

t.  Isn't it true that you never suspected that Mr. Rothstein was involved in any criminal activity, including the Ponzi scheme for which he was convicted?

u.  Were you ever suspicious of Mr. Rothstein's activities?

v.  Isn't it true that Mr. Rothstein was never investigated by the Broward County Sheriff's Office?

w.  Isn't it true that you were never advised from anyone employed by the Broward County Sheriff's Office or anyone else in law enforcement, prior to the end of October 2009 that Mr. Rothstein was involved in criminal activity?

x.  Isn't it true that you never received any information from citizens prior to the end of October 2009, whether they be friends or associates of Mr. Rothstein or investors or otherwise, that Mr. Rothstein was involved in criminal activity?

y.  If you did learn of such purported criminal activity, isn't it true you would have caused Mr. Rothstein to be investigated?

z.  Isn't it true that if you received information regarding Mr. Rothstein's purported criminal activity you would have ceased associating with Mr. Rothstein?

aa. Isn't it true that if you received information regarding Mr. Rothstein's purported criminal activity you would have instructed employees of the Broward County Sheriff Office, including Messrs. Wheeler and Benjamin to cease associating with Mr. Rothstein?

bb. Isn't it true that you never received any information from any source whatsoever that Russell Adler or Katie Adler had any actual knowledge or involvement in Mr. Rothstein's criminal activity?

cc. Isn't it true that Mr. Rothstein never gave you any indication that he was involved in criminal activity?

By way of setting forth the questions above, the Adlers reserve the right to ask, within the scope of the subject matter revealed by each of the afore-stated questions, follow-up questions that expand on the answers given, as well as questions designed to impeach the responses given to the questions set forth above.

WHEREFORE, the Adlers, by and through their undersigned counsel, respectfully request this Honorable Court grant this *Motion*, permit the examination of Sheriff Lamberti and grant any further relief this Honorable Court deems just and proper.

Dated this 8th day of December 2010.   **SLATKIN & REYNOLDS, P.A.**
Attorneys for the Adlers
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
jslatkin@slatkinreynolds.com

By: /s/ Jason E. Slatkin
    Jason E. Slatkin
    Fla. Bar No: 040370

### Certificate of Service

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF noticing system to Paul S. Singerman, Esq., singerman@bergersingerman.com; Charles H. Lichtman, Esq., clichtman@bergersingerman.com, efile@bergersingerman.com; ctarrant@bergersingerman.com; lwebster@bergersingerman.com; and Lawrence Gordich, Esq., LAG@segallgordich.com, IJG@segallgordich.com on this 8th day of December 2010.

/s/ Jason E. Slatkin
Jason E. Slatkin

# EXHIBIT "A"

sun-sentinel.com/news/broward/rothstein/fl-lamberti-rothstein-letter-20100209,0,5700525.story

# South Florida Sun-Sentinel.com

## Letter from Broward sheriff to Rothstein speaks of 'friendship'

By Sally Kestin, Sun Sentinel

February 9, 2010

Just how close was convicted conman Scott Rothstein to Broward's top law enforcement officer?

Sheriff Al Lamberti wrote a letter of congratulations to Rothstein after the now-disbarred lawyer won an award from the Anti-Defamation League in 2008. In it, the sheriff offered his help, should Rothstein ever need it.

"I appreciate your friendship over the past year," Lamberti wrote on Dec. 22, 2008, using his office's official letterhead. "If I may be of any assistance to you whatsoever, either professionally or personally, please feel free to call upon me."



At the time, Rothstein's $1.2 billion Ponzi scheme, the biggest in South Florida history, was in full swing. There is no indication that the sheriff was aware of Rothstein's illegal actions when he wrote the letter, or whether it was routine or something out of the ordinary. Lamberti's office would not say how many similar letters the sheriff has written.

Lamberti did not respond to questions from the Sun Sentinel, including what he meant by friendship and his offer of assistance. His office said Tuesday he was returning from an out-of-town meeting, then planning to attend an evening meeting of the Pompano Beach City Commission.

Rothstein's cozy relationship with some local cops, meant to lend an air of legitimacy to his business and legal ventures, has put two of the sheriff's top commanders under scrutiny. David Benjamin and Tom Wheeler traveled on private planes with Rothstein to football games, and Benjamin escorted him to the airport the day last October that Rothstein fled to Morocco as his investment scheme was unraveling.

Both Wheeler and Benjamin remain on duty, Lamberti's media relations director, Jim Leljedal, said Tuesday.

Wheeler and Benjamin also worked with Rothstein to help Lamberti win a contentious election in 2008. Rothstein and his associates contributed $3,600 to Lamberti directly and another $110,000 to a committee supporting his campaign.

Lamberti's letter was written little more than a month after he won that race as the Republican candidate. It surfaced at an auction of Rothstein's former law office furnishings and knick knacks last month.

Mitch Ceasar, Broward's Democratic chairman, bought the document for about $175 for his collection of political memorabilia. He calls it a "fun conversation piece."

The letter congratulates Rothstein on the award, given to lawyers for work fighting anti-Semitism and bigotry.

"This prestigious award is truly well deserved as it represents the hard work and outstanding contributions you've made to your profession as well as this community," Lamberti wrote.

In the letter, Lamberti also offers Rothstein his "best wishes for continued success in all you do."

Rothstein pleaded guilty last month to five federal charges and now faces up to 100 years in prison.

Database specialist Dana Williams contributed to this report.

Sally Kestin can be reached at skestin@SunSentinel.com or 954-356-4510.

Copyright © 2010, South Florida Sun-Sentinel

# EXHIBIT "B"

sun-sentinel.com/news/broward/fl-wheeler-rothstein-20101201,0,518646.story

# South Florida Sun-Sentinel.com

## No. 2 at BSO cleared in Rothstein case

### Sheriff admits no formal investigation was done

By Brittany Wallman and Jon Burstein, Sun Sentinel

6:50 PM EST, December 1, 2010

Broward Sheriff Al Lamberti has cleared his longtime friend and undersheriff, Col. Tom Wheeler, of any wrongdoing in accepting free private jet trips from Ponzi schemer Scott Rothstein.

Though the Broward Sheriff's Office said for the past year that Wheeler was under investigation, Lamberti now says no formal investigation was ever done.

Lamberti said the trips were OK under BSO's existing policy because "they were not given in return or expectation for something."

However, Lamberti said that the policies are inadequate and will be replaced imminently with tougher ones making gift rules more restrictive and clear.

"I feel the past policy didn't go far enough," Lamberti said. "And in the current climate in Broward County, where citizens are clamoring for ethics reform and for all public officials and public employees to be above reproach, I therefore felt it was necessary to revamp the policy."

Col. Wheeler, the No. 2 at BSO, could not be reached for comment. He was one of two top BSO officials whose dealings with the now-infamous Rothstein brought them under scrutiny. The other, Lt. David Benjamin, remains under investigation, BSO officials said.

Rothstein orchestrated the largest financial fraud in South Florida history — a $1.4 billion Ponzi scheme that came flying apart a little more than a year ago. He's now serving a 50-year prison sentence, but the fallout continues.

Wheeler, one of many law enforcement officials wooed by Rothstein, accepted two trips on jets to football games. Rothstein paid.

advertisement

APPRECIATION
with big buys
FRIDAY-SATURDAY
JCPenney
view today's ad
20% off with your JCPenney Rewards Credit Card
or
extra 15% off with any other form of payment
7AM - 1PM SATURDAY

Lamberti was hesitant to open an investigation last year, despite talk that two of his top men had friendly ties to Rothstein.

He didn't say he would investigate until the *Sun Sentinel* obtained a photograph showing Wheeler on a jet with Rothstein, on their way to a UF- South Carolina game in Gainesville. The photo had been taken in November 2008, when Wheeler was head of BSO's Office of Professional Standards.

"Based on the photograph that surfaced and his own admission that he did take two airplane trips," Lamberti said Wednesday, "I asked our department of professional standards and the department of legal affairs whether or not those two trips violated BSO policy."

Lamberti said no policy was violated, so no formal investigation was necessary. No statements were taken, nothing was written down, and Wheeler was considered cleared. A larger investigation of "all things Rothstein," including Benjamin's dealings, continues.

Wheeler also was on a list BSO sent to the state, of officials required to disclose their finances and gifts. Wheeler didn't report the Rothstein gifts, but Lamberti now says Wheeler's name shouldn't have been on the list, because at the time, he had no authority over spending at BSO.

The bond between Wheeler and Lamberti goes back three decades, to the early 1980s, when Wheeler worked for the state's Alcoholic Beverages and Tobacco, and teamed up with then-sergeant Lamberti busting bottle clubs, where alcohol isn't sold but is consumed.

Wheeler was a fraternity brother at Florida State University with now- Gov. Charlie Crist. Crist appointed Lamberti sheriff in 2007, and Lamberti promptly hired Wheeler.

But Lamberti bristled last year at the suggestion he'd go easy on Wheeler.

"Nobody is bigger than the agency," he said at the time. "Not even me. ... You step over the line, I'm not going to tolerate it."

Federal authorities said Rothstein was playing a game, using Ponzi money to "[provide] gratuities to high ranking members of police agencies in order to curry favor with such police personnel and to deflect law enforcement scrutiny."

He also hired officers and supervisors from the Fort Lauderdale Police Department to guard his home every day, every minute.

The feds arrested Rothstein a year ago, on Dec. 1, 2009.

*Brittany Wallman can be reached at bwallman@SunSentinel.com or 954-356-4541.*

Copyright © 2010, South Florida Sun-Sentinel

# EXHIBIT "C"

